UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JONATHAN ELIAZAR ROMERO CANTADERIO,

Petitioner,

v.

TODD BLANCHE,

Respondents.

CASE NO. 2:26-cv-02394-GJL

ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS IN PART

Petitioner Jonathan Eliazar Romero Cantaderio ("Petitioner") is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 13. On July 20, 2026, Petitioner, through counsel, filed an Amended Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from immigration detention and various forms of injunctive relief. *Id.* Respondents to the Amended Petition include Todd Blanche (U.S. Attorney General), Markwayne Mullin (the Department of Homeland Security ("DHS") Secretary), Julio Hernandez (Acting Field Office Director for ICE's Seattle Field Office), Bruce Scott (Warden of the NWIPC), and ICE. The Amended Petition has been fully briefed. Dkts. 13, 16, 19.

Having considered the Parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Amended Petition **IN PART** and **ORDERS** Petitioner's release from immigration detention and injunctive relief as set forth in the conclusion below.[1]

## I. FACTUAL BACKGROUND

The matter before the Court is a familiar one, and the operative facts are undisputed. *Compare* Dkt. 13 *with* Dkts. 16, 17. Petitioner, citizen of El Salvador, entered the United States as a minor accompanied by his mother and younger sister on March 11, 2024. Dkt. 13 at 6; Dkt. 16 at 2; Dkt 17 at 2. The following day, Petitioner was apprehended by immigration officials, his mother was served with a Notice to Appear charging her as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). Dkt. 13 at 6; Dkt. 16 at 2; Dkt. 17 at 2. Petitioner and his family were then released into the United States on their own recognizance. Dkt. 13 at 6; Dkt. 16 at 2; Dkt. 17 at 2; Dkt. 18-1 (Order of Release on Recognizance ("OREC")). More than two years after his release, Petitioner was re-detained by immigration officials during a traffic stop targeting another individual. Dkt. 13 at 6–7; Dkt. 16 at 2–3; Dkt. 17 at 2–3. Since his re-detention on June 18, 2026, Petitioner has remained detained at NWIPC without receiving either advanced notice or a hearing regarding the reasons for his detention. *See* Dkt. 13; Dkt. 16 at 7.

## II. PROCEDURAL BACKGROUND

In his Amended Petition filed pursuant to 28 U.S.C. § 2241, Petitioner alleges his detention without an individualized hearing is unlawful and that he is entitled to various forms of injunctive relief. Dkt. 13. On August 3, 2026, Respondents filed a Return alleging that the manner by which Petitioner was re-detained was lawful, that Petitioner's request for injunctive relief relating to removal are unripe, and that, if habeas relief is warranted in this case, the Court

[1] The Parties have consented to proceed in this matter before a United States Magistrate Judge. Dkt. 7.

should issue a conditional writ requiring that Petitioner be provided a bond hearing instead of immediate release. Dkt. 16 at 8. Respondents also filed evidence with their Return. Dkts. 17, 18, 18-1 through 18-12. Petitioner filed a timely Traverse and supporting evidence on August 10, 2026. Dkts. 19, 20, 21.

Having reviewed the Parties' arguments, the factual record, and the relevant legal authority, the Court concludes that Petitioner did not receive adequate due process in connection with his current immigration detention and grants, in part, the Amended Petition on that basis.

## III. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is in "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. Due process protections extend to all individuals within U.S. borders, including noncitizens, regardless of their immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Procedural due process demands meaningful notice and a genuine opportunity to be heard before the federal government infringes upon a liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Courts in the Ninth Circuit apply the *Mathews* balancing test in immigration detention cases, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the Government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

//

## IV. DISCUSSION

At the outset, the Court observes that, although Respondents' Return argues that the Amended Petition should be denied, Respondents concede points of law and submit evidentiary materials that appear to run contrary to their litigation position. *See* Dkt. 16. As a result, and perhaps as a reflection of their vulnerable position, Respondents' arguments fail to meaningfully address how the process actually afforded to Petitioner complied with due process.

Respondents first acknowledge that this Court has previously rejected their argument that noncitizens, like Petitioner, who were previously released from immigration custody on ORECs and later re-detained are subject to mandatory detention rather than the discretionary detention scheme of 8 U.S.C. § 1226(a). Dkt. 16 at 4 (citing *Singh v. Mullin*, No. 2:26-cv-01730-GJL, 2026 WL 2111274, at *2 (W.D. Wash. July 22, 2026) ("[T]his Court has previously rejected [the Government's] mandatory detention argument and does so again here.")). Respondents are correct that this Court has rejected that argument, and the Court does so again here.

Respondents next argue that, even if Petitioner was subject to discretionary detention, the process accompanying his re-detention was nevertheless lawful. *Id.* at 4–8. In doing so, Respondents' argument follows two threads: (1) that due process did not require a *pre-deprivation* hearing under the circumstances of this case and (2) that Petitioner "does not assert" that he requested any *post-deprivation* process. Dkt. 16 at 4.

This argument unravels when met with Respondents' own evidentiary submissions. On the date of Petitioner's arrest, immigration officials provided Petitioner with written notification that he was entitled to seek review of his custody determination by an IJ. *See* Dkt. 18-11 (Notice of Custody Determination). Petitioner acknowledged receipt of this Notice and then *affirmatively requested* review by an IJ. *Id*. Thus, while Respondents may be technically correct that the Amended Petition does not <u>allege</u> that Petitioner affirmatively requested any post-deprivation

process, their own evidence establishes that he did. *See* Dkt. 13. Yet Respondents do not explain why, after notifying Petitioner of his right to a post-deprivation custody review before an IJ, no hearing was provided. *See* Dkt. 16 at 7.

Thus, Respondents' emphasis on whether a *pre-deprivation* hearing was required answers a question that is not dispositive here. Even assuming *arguendo* Respondents are correct that due process permitted immigration officials to take Petitioner into custody without first providing a hearing, that does not explain their failure to provide the *post-deprivation* process that their own Notice contemplated, and that Petitioner expressly requested. The Court need not determine whether due process required *pre-* or *post*-deprivation hearing under the circumstances of this case—Respondents provided neither.

The Court now turns to whether Petitioner's continued detention without an individual custody determination comported with due process under the familiar framework set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Each of the three *Mathews* factors weighs in Petitioner's favor.

First, Petitioner's private interest is substantial. Petitioner, who entered the United States as a minor, lived outside immigration detention for years before Respondents abruptly returned him to physical custody. *See* Dkt. 13 at 6; Dkt. 20. His interest in maintaining that liberty, and avoiding renewed physical confinement, lies at the core of the liberty interests protected by the Due Process Clause. *See Zadvydas*, 533 U.S. at 690; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). The first *Mathews* factor weighs heavily in Petitioner's favor.

Second, the procedures employed here created a substantial risk of erroneous deprivation, while additional process offered significant value. Petitioner was re-detained during a traffic stop, without advance notice that his liberty would be revoked and without an opportunity to contest the factual or legal basis for his renewed detention before a neutral decisionmaker. *See*

Dkt. 13 at 6–7; Dkt. 17 at 3; Dkt. 18-5. Respondents have submitted evidence identifying that, from the perspective of arresting officers, there was an individualized justification for Petitioner's re-detention. *See* Dkt. 18-5 at 4. But that initial determination was never tested through an adversarial proceeding in a neutral forum. *See* Dkt. 16 at 7. Indeed, Respondents' own records demonstrate both that Petitioner was advised of his ability to obtain custody review by an IJ and that he requested that review. Dkt. 18-11. Yet no such review followed. *See* Dkt. 16 at 7. A prompt custody hearing therefore would have provided substantial value by permitting a neutral decisionmaker to test the factual and legal grounds asserted for depriving Petitioner of his liberty. *See Ramirez Tesara*, 800 F. Supp. 3d at 1137; *E.A. T.-B.*, 795 F. Supp. 3d at 1324. The second *Mathews* factor likewise weighs strongly in Petitioner's favor.

Third, the Court recognizes the Government's substantial interest in the efficient administration and enforcement of the immigration laws, including its lawful authority to detain noncitizens when appropriate. But Respondents identify no concrete administrative burden that would have resulted from providing Petitioner a prompt hearing to test the reasons for his re-detention in a neutral forum. *See* Dkt. 16 at 6–7 (arguing only that no *pre-deprivation* process was due). That omission is particularly notable here because, again, immigration officials themselves notified Petitioner that he could seek review before an IJ, Petitioner requested that review, and Respondents nevertheless failed to provide it. *See* Dkt. 18-11; Dkt. 16 at 7.

As this Court has repeatedly recognized, custody hearings are routine proceedings, and the marginal administrative burden associated with providing such review is insufficient to outweigh the substantial liberty interest implicated by physical detention. *See E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ledesma Gonzalez v. Bostock*, No. 2:25-cv-01404-JNW-GJL, 2025 WL 2841574, at *8 (W.D. Wash. Oct. 7, 2025). The third *Mathews* factor therefore also favors Petitioner.

On balance, the *Mathews* factors establish that the process afforded here was constitutionally inadequate. Again, the Court need not decide whether the Constitution required Respondents to provide a pre-deprivation hearing given the specific circumstances in this case because, even if immediate re-detention without a prior hearing was permissible, due process required some meaningful and timely opportunity for Petitioner to contest the deprivation of his liberty before a neutral decisionmaker. *Mathews*, 424 U.S. at 333 ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Respondents have fallen short of this standard.

Accordingly, the Court concludes that Respondents re-detained Petitioner without providing the process due to him under the Fifth Amendment to the United States Constitution. The ability for Petitioner to be heard and challenge the reasons for his re-detention in a neutral forum serves "as a crucial bulwark against the unfettered disregard of individual liberty interests." *G.S. v. Hermosillo*, No. 25-cv-2704-TSZ, 2026 WL 179962, at *3 (W.D. Wash. Jan. 22, 2026). Despite its constitutionally critical utility and the limited administrative burden it entails, Respondents failed to provide such procedural protections in this case. Worse yet, this failure appears to be part of a much larger and deeply troubling pattern of denying due process to noncitizens in this District.[2]

//

[2] While the Court does not undertake a true accounting of factually similar cases wherein Respondents detained noncitizens without the required processes, it observes that some of the earliest cases reaching that conclusion have been cited more than one-hundred times in subsequent decisions from this District alone. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320 (W.D. Wash. 2025) (240 reported Westlaw citations from courts in this District since August 19, 2025, with more than 600 total citing references); *Ramirez Tesara*, 800 F. Supp. 3d 1130 (146 reported Westlaw citations from courts in this District since September 12, 2025, with more than 250 total citing references).

## V. REMEDY

### A. Immediate Release

Having determined that Petitioner was re-detained without the constitutionally required process, the Court now determines the appropriate remedy for his unlawful confinement. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "In modern habeas practice, courts often 'employ a conditional order of release,' which orders the government to release the petitioner unless it 'takes some remedial action' that corrects" the government's violation of the law. *Cardozo v. Bostock*, No. 2:25-CV-00871-TMC, 2025 WL 2592275, at *2 (W.D. Wash. Sept. 8, 2025) (quoting *Harvest v. Castro*, 531 F.3d 737, 741–42 (9th Cir. 2008)).

This Court and others in this District have ordered conditional release where, for example, the record showed that ICE officials performed some individualized assessment of flight risk, dangerousness, or noncompliance with release conditions before re-detaining a petitioner and that assessment provided the basis for the re-detention decision. *See, e.g., Caisa Telenchana v. Hermosillo*, No. 2:26-CV-00363-GJL, 2026 WL 696806, at *13 (W.D. Wash. Mar. 12, 2026); *Singh v. Noem*, No. 2:26-cv-00246-BAT, 2026 WL 592265, at *3 (W.D. Wash. Mar. 3, 2026); *Balwan v. Bondi*, No. 2:26-cv-00248-LK, 2026 WL 497098, at *5 (W.D. Wash. Feb. 23, 2026).

This case, however, presents a materially different circumstance. It is true enough that Respondents submitted evidence suggesting that immigration officials conducted at least some individualized assessment of Petitioner's flight risk when taking him into custody. *See* Dkt. 18-5 at 4. But following that initial determination, Petitioner received no further process. Indeed, the record before the Court demonstrates that Respondents affirmatively notified Petitioner of the

availability of individualized custody review by an IJ, Petitioner timely invoked that process, and Respondents simply failed to provide it. Dkt. 18-1; Dkt. 16 at 7. Although they attempt it, Respondents cannot convincingly rely on that very fact to demonstrate that a court-ordered bond hearing, rather than release, is the appropriate remedy here. Instead, Respondents' Notice that Petitioner was entitled to a hearing before an IJ from the first date of his re-detention and their subsequent (and unexplained) failure to provide it distinguish this case from those in which the Court found a conditional order of release requiring a bond hearing sufficient to remedy a procedural due process violation. *C.f. Caisa Telenchana*, 2026 WL 696806, at *13; *Singh*, 2026 WL 592265, at *3; *Balwan*, 2026 WL 497098, at *5.

It must be emphasized that conditional writs are granted as an accommodation to the Government—one final opportunity to right their constitutional wrong. *Soto Gimenez v. Hernandez*, No. 2:26-CV-00966-GJL, 2026 WL 1262016, at *1 (W.D. Wash. May 8, 2026) (quoting *Harvest*, 531 F.3d at 742). Having detained Petitioner for more than two months without providing a hearing (and without offering any explanation for that failure), Respondents have already failed to provide the very process they themselves offered to Petitioner. Under these circumstances, the Court is not persuaded that an accommodation granting Respondents additional time to provide that process is warranted.

Accordingly, the Court declines Respondents' invitation to grant a conditional writ and finds that immediate release from immigration detention is the appropriate remedy in this case.

**B. Injunctive Relief**

In addition to immediate release, Petitioner requests various forms of injunctive relief. Dkt. 13 at 17–19. First, Petitioner asks that Respondents be prohibited from re-detaining him during the pendency of his removal proceedings without providing written notice and a hearing prior to re-detention at which Respondents would bear the burden of proving by clear and

convincing evidence that he is a flight risk or a danger to the community. *Id.* The Court concurs that, consistent with the requirements of due process, Respondents must provide written notice and a hearing before a neutral decisionmaker in conjunction with future re-detention decisions while Petitioner's removal proceedings are pending. With respect to the timing and evidentiary burden required, however, the Court declines to prescribe a particular procedural framework for all possible re-detention decisions Petitioner may face.

Finally, Petitioner seeks injunctive relief related to possible future removal efforts. *Id.* However, Petitioner's proceedings in the immigration court remain in a pre-removal posture and, thus, his claims to enjoin removal are too speculative to warrant relief at this time. *C.f. Tran v. Bondi*, No. C25-01897-JLR, 2025 WL 3140462, at *4 (W.D. Wash. Nov. 10, 2025) (declining to reach similar claims for relief on ripeness grounds (citing *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580 (1985) and *Thomas v. Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1138 (9th Cir. 2000))).

## VI. CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

(1) Petitioner's Amended Petition (Dkt. 13) is **GRANTED IN PART**;

(2) Respondents **SHALL release** Petitioner Jonathan Eliazar Romero Cantaderio from custody **within 24 HOURS** under the conditions consistent with those in place at the time of his re-detention;

(3) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them **SHALL NOT** re-detain Petitioner unless an Immigration Court hearing is held (on adequate notice) to determine whether detention is appropriate, or until Petitioner is issued a final order of removal; and

//

//

//

(4) Respondents **SHALL** file a certification within **48 HOURS** of the issuance of this Order, confirming that the Petitioner has been released from custody and providing the date and time of his release.

Dated this 26th day of August, 2026.

Grady J. Leupold
United States Magistrate Judge